## Mary New

*v.*

## Jesse E. Oldfield.

*Filed at Ottawa May 19, 1884.*

1. Fraudulent conveyance—*debtor conveying property to his cred-itor—of conveyances by the debtor to his wife.* A debtor, though largely indebted, may sell and convey property to a creditor, and if the transaction is made in good faith, and is honest and fair, it may be upheld. But the law does not allow a debtor in failing circumstances, either directly or indirectly, to transfer his property to his wife, and thus place it beyond the reach of his creditors.

2. A wife may purchase property with her own means, and hold the same in her own name, and such property will not be liable to be taken for the husband's debts; but she can not buy and hold property, as against his cred-itors, with means belonging to her husband; and earnings by the husband from a business, though carried on in the wife's name, when she had no money of her own invested in it, can not be regarded as her own.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. George Gardner, Judge, presiding.

Mr. H. H. Anderson, for the appellant:

In *Driggs* v. *Russell*, 3 B. R. 161, Mrs. Russell, a married woman, carried on, managed and controlled an iron foundry, and other business interests, in her own name, with funds loaned her by friends, to whom she gave her own notes, with whom she advised as with her husband as to proposed in-vestments. The husband, who was insolvent, was hired by the wife, and received a monthly compensation. It was held that the property used in the business, and that purchased by her and standing in her name, was her individual prop-erty, and not liable to be taken to satisfy the claims of her husband's creditors.

Under the married woman's acts of New York, (substan-tially as ours of 1869,) it has been held that neither the fact

that a wife employs her husband, nor the fact that the labor and skill of the husband contribute to the success of the business, will make the business or its profits the property of the husband. *Vorhees* v. *Bonestead,* 7 Blatchf. 500; *Gage* v. *Dauchy,* 34 N. Y. 293; *Beechley* v. *Wells,* 33 id. 518; *Knapp* v. *Smith,* 27 id. 277; *Bongard* v. *Core,* 82 Ill. 21; *Dean* v. *Bailey,* 50 id. 481; *Primmer* v. *Claybaugh,* 78 id. 96.

Messrs. GARY, CODY & GARY, for the appellee:

A conveyance of property, under the circumstances of this case, is fraudulent as to creditors, and upon proper proceedings will be subjected to the payment of their claims. *Jaffers* v. *Aneals,* 91 Ill. 487; *Emerson* v. *Bemis et ux.* 69 id. 537; *Phelps* v. *Curtis,* 80 id. 109; *Bennett* v. *Stout,* 98 id. 47; *Fleming* v. *Hiob,* 3 Bradw. 390; *Power* v. *Alston,* 93 Ill. 587; *Jones* v. *King,* 86 id. 225; *Guffin* v. *First National Bank,* 74 id. 259.

The law allows no man, beyond the specific exemptions of the statute, by any form of contract or mode of disposing of property, whatever it may be, to secure the use of his property to himself, to the exclusion of his creditors. *Annis* v. *Bonar,* 86 Ill. 130.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a creditor's bill, brought by Jesse E. Oldfield, in the Superior Court of Cook county, against Mary New, Michael New and Nicholas New, to subject a certain lot to the payment of a judgment which Oldfield obtained against Nicholas New, in June, 1881, upon an indebtedness contracted while Nicholas New was the owner of the property. Upon the hearing in the Superior Court, a decree was rendered in favor of the complainant in the bill, which was affirmed in the Appellate Court.

There is no substantial controversy between the parties in reference to the facts established by the evidence, and the only question presented for our decision is, whether the tes-

timony submitted on the hearing was sufficient to authorize
the decree rendered by the Superior Court.

On the 12th day of November, 1874, Nicholas New, being
in failing circumstances, conveyed to his brother, Michael
New, the property in controversy, described as lot 3, block 1,
in Singer & Talcott's addition to Lemont, in Cook county, for
an expressed consideration in the deed of $3200,—Mary New,
the wife of the grantor, joining in the conveyance. The
property at the time was occupied by the grantor as a home-
stead. The consideration for this deed, as shown by the
evidence of Nicholas New, was a debt due his brother of
$2200, and a note of $1000 given by the grantee, payable at
a future day. After this pretended purchase Michael New
went into the possession of the property, and kept a board-
ing house and saloon for about two years, when he moved
away and rented the property to Mary New, who, with her
husband, carried on the same business until August 19, 1879,
when Michael New reconveyed the property to Mary New, for
an expressed consideration of $3000. Five hundred dollars
was paid down. The one thousand dollar note which Michael
had executed when he purchased the property, was returned
to him, and Mary New gave her notes for $1500, due in one,
two and three years, secured by mortgage on the premises.

A debtor, although at the time he may be largely indebted,
may sell and convey property to a creditor, and if the trans-
action is made in good faith, and is honest and fair, it may
be upheld and sustained. A wife may purchase, with her
own means, property, and hold the same in her own name,
and such property will not be liable to be taken and sold in
payment of debts contracted and owing by the husband. But
the question presented by this record is, whether the pre-
tended sale from Nicholas New to his brother, Michael, and
from Michael to the wife of Nicholas, will fall within the rule
indicated; or were these transfers a mere shift or device to
cover up the property, and hold it under cover for the bene-

fit of the original owner, Nicholas New. The fact that Nicholas New conveyed to his brother, Michael, and that Michael conveyed back to the wife of the grantor, is of itself a suspicious circumstance, and the account Mary New gives of the transaction is not calculated to inspire confidence in the honesty of the trade. She testified: "We bought the house and lot from Michael. We lost everything. We owed Michael so much, and he took possession, and we got out. We got it back again. We gave him $500 cash, and we owe him $1500 yet, and we gave him back his note for $1000, which he had given us when we sold the property to him." From this account of the transaction it does not appear that she bought the property with her own means, obtained from a source other than her husband, but, on the other hand, $1000 which was paid was a promissory note which had been given to Nicholas by Michael, when the latter pretended to buy the property. There is no pretense that this note belonged to Mary New, and as to the $500 paid in cash, it was earned by Nicholas from the business carried on in the property. It is true the business was conducted in the name of the wife, but, so far as appears, she had no money of her own invested in it, and the earnings could not be regarded as belonging to her. Under such circumstances we perceive no ground upon which the transfer of the property to Mary New can be sustained. The law does not allow a debtor in failing circumstances, either directly or indirectly, to transfer his property to his wife, and thus place it beyond the reach of his creditors; but on the other hand, when it is apparent, as it is in this case, that the debtor retains the real ownership of the property, it is the province of a court of equity to subject the property to the payment of the debtor's debts.

We think the decree of the Superior Court is fully sustained by the evidence, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*